FILED

DEC 2 1 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD R. YOUNG,

                Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

              Defendant.

Civil No. 09-0023-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

    Plaintiff Donald Young ("Young") seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

    For the reasons below the Commissioner's decision should be REVERSED and REMANDED for the immediate calculation and award of benefits.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1956 (Tr.59[1]), Young has a post-graduate education. Tr. 94. Between 1988 and 2003 Young worked as an elementary school teacher and since August 2001 as an elementary school principal. Tr. 103. Based on the loss of function of his right vestibular nerve, Young alleges that he suffers from a disability due to "vertigo associated with disturbance of labyrinthine-vestibular [nerve] function" and oscillopsia.[2] Tr. 82.

Young applied for DIB on March 18, 2004, alleging disability since December 20, 2003. Tr. 59-61. His application was denied initially and upon reconsideration (Tr. 46-56), and an Administrative Law Judge ("ALJ") held a hearing on March 2, 2005. Tr. 340-74. On June 24, 2005 the ALJ found Young not disabled. Tr. 14-28. Young appealed that decision, and on March 16, 2007, this court remanded the matter to the ALJ for further proceedings. Tr. 410-30.

The ALJ held a second hearing on April 11, 2008 (Tr. 603-65), and again found Young not disabled on May 30, 2008. Tr. 389-409. The Appeals Council denied review of the matter, making the ALJ's decision the final decision of the Commissioner. Tr. 375-78. Young again appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert,*

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer March 23, 2009 (Docket #7).

[2] Oscillopsia is defined as "abnormal jerky eye movements . . . [which] create a subjective sensation that the environment is oscillating." Kenneth N. Anderson *et al, Mosby's Medical, Nursing, & Allied Health Dictionary* (5th ed. 1998).

482 U.S. 137, 140 (1987). Young challenges the ALJ's evaluation of his credibility between steps three and four, and her finding that he is not disabled at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If he determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into

consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*

at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§

404.1566; 404.1520(g).

## THE ALJ'S FINDINGS

In his May 30, 2008, decision, the ALJ found Young not disabled for the second time.  The

ALJ made step two findings:

> The claimant has the following severe impairments: a history of
> labyrinthitis with vestibular neuronitis and possible perilymph
> fistulas; sleep apnea; and a history of depression and anxiety that
> constituted "severe" impairments through the date of the prior hearing
> decision, but have not constituted "severe" impairments since that
> date.

Tr. 392.  The ALJ found that these impairments did not meet or equal a listed impairment at step

three. Tr. 393. The ALJ found Young's symptom testimony "not credible to the extent inconsistent

with the assessment of the residual functional capacity." Tr. 395.  The ALJ subsequently found that

Young has the residual functional capacity to perform light work, with the following

accommodations:

> [A] need to avoid straining, bending over, rapid head movements,
> rapid postural changes, and crowds due to the effects of movement in
> his field of vision; and by his inability to tolerate exposure to loud
> noises, heights such as ladders or scaffolds, or frequent movement not
> within his control such as that which would be experienced while
> riding in the back seat of an automobile.

Tr. 394.  At step four the ALJ found that Young could not perform his past relevant work as an

elementary school principal.  Tr. 407.  The ALJ finally found that Young retains the ability to

perform other work in the national economy as a table worker, ticketer, and garment sorter. Tr. 408.

The ALJ therefore found Young not disabled. Tr. 409.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. Soc. Sec. Admin,* 466 F.3d 880, 882 (9th Cir. 2005); *Edlund v. Massinari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews,* 53 F.3d at 1039.

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883, *citing* SSR 96-8p at *5 (available at 1996 WL 374184); 20 C.F.R. § 404.1545(a)(3); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). However, the reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007).

## DISCUSSION

Young challenges only the ALJ's credibility findings. This court's review therefore is limited to the ALJ's credibility findings and the manner in which these findings comply with this court's March 16, 2007, remand Order.

## I.    Remand Order

Young contends that the ALJ failed to comply with this court's March, 2007, remand Order. Magistrate Judge Stewart ordered the ALJ to reassess Young's testimony, stating that, "in particular, the ALJ should establish how long Young can read or work before requiring a break and for how long he needs a break." Tr. 429.

The reviewing court's remand order may include "detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989). Deviation from such an order is legal error which may warrant reversal. *Id.* at 885-886.

The ALJ made no findings regarding Young's ability to read. The ALJ therefore failed to address this court's specific instruction.

Regarding Young's workplace breaks, the ALJ noted Young's testimony that he requires a break after fifteen minutes of light activity, but found this assertion unsupported by the medical evidence. Tr. 405-406. This analysis is erroneous, for reasons explained fully below.

The ALJ therefore failed to comply with this court's remand instructions. Such deviation may warrant reversal. *Sullivan*, 490 U.S. at 885-86. The effects of this deviation are discussed fully, below.

II.    **Young's Credibility**

The ALJ found Young "not credible to the extent inconsistent" with his RFC. Tr. 395. The ALJ rejected Young's testimony that he must rest after more than fifteen or twenty minutes of activity, finding this assertion unsupported by "commensurate objective medical findings, consistent subjective reports of a similar degree of symptomology to all contemporaneous treating medical providers, or evidence of clinically justifiable functional limitations that could be considered attributable to a medically determinable impairment." Tr. 406.

A.    **Standards: Credibility**

The ALJ performs a two-step analysis in his credibility finding. First, the ALJ determines if the claimant has shown an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen*, 80 F.3d at 1273). If the claimant establishes such an impairment, and there is no finding of malingering, the ALJ proceeds to the second step, where he must provide "clear and convincing" reasons for finding a claimant not credible. *Id.* The ALJ evaluates a claimant's excess fatigue testimony under the same standards that he evaluates excess pain testimony. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

7 - FINDINGS AND RECOMMENDATION

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.   Analysis

#### a.   Credibility and RFC Assessment

The court first notes that the ALJ's analysis reverses the manner in which he must consider credibility. The ALJ must consider a claimant's credibility in the course of assessing a claimant's residual functional capacity. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). Here, the ALJ first found that Young's credibility was limited "to the extent" his statements "are inconsistent with the residual functional capacity assessment . . . ." Tr. 395. No authority suggests an ALJ may reason that a claimant is not credible based upon the claimant's RFC assessment. The ALJ's finding that Young is not credible based upon his RFC disregards the role of credibility analysis in determining an RFC and therefore should not be sustained.

#### b.   Young's Medical Record and Credibility

The ALJ's credibility analysis cited Young's medical record (Tr. 396), which the ALJ discussed in considerable detail. Tr. 396-407. The ALJ found Young's symptom testimony unsupported by "objective medical findings of abnormality that could reasonably be expected to result in such significant limitation." Tr. 396.

##### i.   Standard: Medical Records and Credibility

Once a claimant establishes an impairment that could reasonably cause the reported

symptoms, the ALJ may not require that medical evidence corroborates the degree of symptom testimony the claimant proffers. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen*, 80 F.3d at 1282)). However, the ALJ may consider a claimant's medical record in conjunction with other credibility factors. *Smolen*, 80 F.3d at 1284. Here, the ALJ may rely upon physician observations. *Id.* at 1282.

### ii.    Causal Link Between Impairment and Symptoms

The ALJ found no "evidence of clinically justifiable functional limitations that could be considered attributable to a medically determinable impairment." Tr. 406. The ALJ did not immediately explain the reason for this finding. The ALJ's finding appears to be based upon his preceding discussion of Young's treating and examining medical providers.

The Commissioner asserts that Young must show by objective evidence that he experienced fatigue. Def.'s Br. 8-11. The Commissioner, citing evidence the ALJ did not rely upon, infers that Young's fatigue is a "secondary symptom" and that Young inconsistently reported fatigue to his physicians. Def.'s Br. 9. The reviewing court may not now rely upon reasoning the ALJ did not assert. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Further, the Commissioner misapplies the relevant standard: the claimant must show that his impairment *"could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1284 (emphasis original).

Treating physician Dr. Schleuning, an otolaryngologist, found on Fune 23, 2004, that Young had loss of labyrinthine function of the right ear. Tr. 243. Dr. Schleuning stated that this caused a feeling of lightheadedness, unsteadiness, and unstable balance. *Id.* Treating physician Dr. Black, who specializes in otology-neurology (Tr. 537), diagnosed "bilateral perilymph fistulas of uncertain etiology." Tr. 538. Dr. Black found that Young had difficulty "maintaining stance" in the Romberg

positions.[3]  Tr. 544.  The medical record also shows that treating physician Dr. Reploeg diagnosed

sleep apnea on June 6, 2006.  Tr. 522.

These diagnoses show that Young could reasonably be expected to experience both dizziness

and fatigue.  Young therefore meets the first prong of the two-step credibility analysis.  The ALJ may

not subsequently require that the medical record support the degree of symptom testimony that Young

alleges.  *Lingenfelter*, 504 F.3d at 1036; *Smolen*, 80 F.3d at 1284.

The Commissioner also asserts that Young's symptom testimony is unsupported by the

medical record because Young did not "consistently allege the same degree of extreme limitation on

a contemporaneous basis to all of his treating medical providers." Def.'s Br. 9.  The Commissioner's

submission is enclosed in quotations, but the Commissioner fails to identify the source of his

quotations.  *Id.*  While consistent symptom reporting may bolster a claimant's credibility, the

Commissioner's Ruling also instructs that "symptoms may vary in their intensity, persistence, and

functional effects, or may worsen or improve with time . . . ." SSR 96-7p at *5 (available at 1996 WL

374186).  In such a setting, symptom-free periods may be consistent with disability.  *Reddick v.

Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 833).  The Commissioner's

submission therefore fails.

Finally, the ALJ also found Young's symptom testimony unsupported by the medical record

because he did not report his dizziness and fatigue to physicians treating his prostate cancer.  Tr. 401-

02.  In this era of specialized and managed healthcare, it is unlikely that a treating urologist or

---

[3]The Romberg test is an indication of "loss of sense of position" in which the patient
loses balance when standing erect with his eyes closed.  Kenneth N. Anderson et al. eds.,
*Mosby's Medical, Nursing, & Allied Health Dictionary* (5th ed. 1998).

proctologist would identify or address neuro-vestibular symptoms, and there is no evidence in the record indicating that Young asked these specialists to treat him for a condition outside their specialty.

For all of these reasons, the ALJ erroneously found that Young's medical record did not corroborate his symptom testimony. This finding should therefore not be sustained.

### b.    Activities of Daily Living

Young challenges the ALJ's citation to his activities of daily living. Pl.'s Opening Br. 26 (citing Tr. 396). Young cites the ALJ's decision, but the indicated page does not discuss Young's activities of daily living. The Commissioner presently cites the ALJ's references to Young's reports to his chiropractor and examining psychologist Dr. Boyd. Def.'s Br. 16. The Commissioner also cites the ALJ's discussion of Young's wife's testimony. Def.'s Br. 17.

The ALJ did not make concentrated findings regarding Young's daily activities. As noted by the Commissioner, the ALJ cited Young's report to his chiropractor that he was still dizzy but was "starting exercise-riding bike." Tr. 398. The ALJ also cited Young's report to examining psychologist Dr. Boyd that he maintained personal care and his finances, arranged transportation, and shopped for groceries, but required a break after performing fifteen minutes of light work. Tr. 405. The Commissioner now asserts that these activities "call into question" Young's credibility. Def.'s Br. 17.

### i.    Young's Reports to Medical Sources

The record shows that Young reported to his chiropractor that he was "feeling better" on March 4, 2004, and was "now starting exercise-riding bike." Tr. 193. However, Young also reported that he was "still dizzy and lightheaded." *Id.* As the ALJ noted (Tr. 398), the record does not indicate

whether Young was riding an exercise bike or biking outdoors. The record is also silent regarding how long Young rode the exercise bike, and if he continued using it. The ALJ may not chastise a claimant for engaging in limited exercise consistent with his disability. *Reddick*, 157 F.3d at 722-23. The ALJ's citation does not show that Young's symptoms were alleviated, or that he engaged in activities inconsistent with his alleged disability. This reasoning should therefore not be sustained.

On December 14, 2007, Young reported to examining psychologist Dr. Boyd that he has difficulty completing household chores, but can perform light duties spaced throughout the day. Tr. 592. Young also reported that when he does these chores he rests every fifteen minutes. *Id.* The ALJ found that this report was not supported by "commensurate objective medical findings" and that it was also contradicted by the fact that he did not consistently allege "the same degree of extreme limitation on a contemporaneous basis to all of his treating medical providers." Tr. 405. The court already has rejected the ALJ's requirement to credibility that Young must provide objective medical findings supporting his symptom testimony, and that Young should have reported his symptoms to all medical providers regardless of the conditions for which they were treating him. The ALJ's reasoning regarding Young's report of his activities to Dr. Boyd is not based upon the appropriate legal standards and should be rejected.

### ii.    Lay Testimony

Finally, the Commissioner asserts a third-party report submitted by Young's wife showed that he was not forthcoming about his alleged limitations in his daily activities. Def.'s Br. 17. The ALJ noted Donna Young's description of her husband's activities (Tr. 405), but made no finding regarding the effect of this description upon Young's credibility. The ALJ instead rejected Donna Young's

testimony because she left the house to work each day, and therefore "was not in a position to independently observe his alleged limitation . . . ." Tr. 406. The ALJ subsequently found Donna Young's testimony "credibly supported by the weight of the evidence only to the extent consistent with the assessment of the claimant's residual functional capacity in this decision." Tr. 407.

As noted, the Commissioner cannot now cite reasoning which the ALJ did not assert. *Connett*, 340 F.3d 874. The ALJ did not find Young not credible based upon information regarding his activities of daily living contained in Donna Young's report. This submission should therefore be rejected.

Further, the ALJ's reasoning regarding Donna Young's testimony again contravenes the role of testimony in construing a claimant's RFC. The ALJ considers lay testimony, as he does a claimant's testimony, before reaching the RFC assessment. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). The ALJ's finding that Donna Young is credible only so far as her testimony is consistent with Young's RFC again reverses the order of analysis. This finding should not be sustained.

### c.    Alleged Secondary Gain

The ALJ inferred that Young's benefit application was motivated by secondary gain, finding that "medical records further reflect that the claimant has demonstrated a focus upon obtaining documentation from physicians to support a previously pending PERS claim and his ongoing Social Security disability benefit claim." Tr. 396.

The ALJ may not chastise a claimant for seeking disability benefits payments; such reasoning circumvents the very purpose of disability benefit applications. *Ratto v. Chater*, 839 F.Supp. 1415,

1428-29 (D. Or. 1993).  Contrary to the Commissioner's assertion (Def.'s Br. 15), this standard applies to witnesses involved in preparing evidence prior to the hearing before an ALJ.  *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (citing *id.*).  Furthermore, the ALJ may not reject a physician's opinion simply because it was solicited to support a benefit application.  *See Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996) (ALJ may not reject physician opinion because it was solicited by claimant's counsel in support of benefit application).

The ALJ's reasoning that Young is not credible because he sought medical documentation in support of his disability application is inconsistent with this standard.  This finding therefore should not be sustained.

### C.    Conclusion: Young's Credibility

In summary, the ALJ erroneously cited Young's medical record and made unsupportable inferences regarding Young's alleged secondary gain.  The ALJ's credibility determination therefore should not be sustained.

**<u>REMAND</u>**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the

claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). In such circumstances the reviewing court must credit the improperly rejected evidence. *Vasquez v. Astrue,* 547 F.3d 1101, 1106-07 (9th Cir. 2008) (*en banc review denied,* 572 F.3d 586 (9th Cir. 2009)). It is axiomatic, however, that the reviewing court may not credit testimony and subsequently award benefits contrary to the Act. *See Vasquez,* 572 F.3d at 589 (O'Scannlain J., dissenting).

The ALJ failed to provide legally sufficient reasons for rejecting Young's testimony. Young testified at his April 11, 2008, hearing that his fatigue has been "unchanged" (Tr. 611), and that he has difficulty with balance (Tr. 611-12, 622), concentration (Tr. 613-14), and memory. Tr. 614. Young also testified that he experiences lightheadedness (Tr. 608, 610, 622, 617), that must concentrate on where he steps when walking (Tr. 620), and that he still has "shaky vision" when his head moves from side to side. Tr. 617. Young also described numerous postural limitations prescribed by his treating physician, Dr. Black. Tr. 612. Finally, Young testified that he requires rest in the midmorning and midafternoon. Tr. 624. In such circumstances, the improperly rejected evidence should be credited. *Hammock v. Bowen,* 879 F.2d 498, 503-04 (9th Cir. 1989) (crediting as true erroneously rejected claimant testimony and physician opinions where treating physicians's opinions supported claimant's testimony). The court therefore credits this evidence and now discusses the effect of the credited testimony and medical opinions under the second and third prongs of the *Harman* analysis.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second *Harman*

prong. *Harman*, 211 F.3d at 1178. Two hearings have been conducted before an ALJ, resulting in two decisions by an ALJ, and a remand Order from this court. The court finds this record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires award of benefits after the improperly rejected evidence is credited. *Harman*, 211 F.3d at 1178. The vocational expert testified that a claimant precluded from carrying items obstructing his vision, limited to occasional reading, unable to maintain consistent, prolonged concentration, and requiring rest in the midmorning and midafternoon would be precluded from performing work in the national economy. Tr. 661. This testimony establishes that Young cannot perform work in the national economy at step five in the sequential proceedings. Consequently, Young is disabled under the Commissioner's regulations.

## CONCLUSION AND RECOMMENDATION

The ALJ's decision is not based upon the appropriate legal standards or substantial evidence. Crediting the improperly omitted testimony establishes that Young is disabled under Title II of the Act. The ALJ's decision should therefore be reversed and remanded for the immediate calculation and award of benefits.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 4, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy

of the objections.  When the response is due or filed, whichever date is earlier, the Findings and

Recommendation will go under advisement.

      IT IS SO ORDERED.

      Dated this 21st day of December, 2009.

JOHN V. ACOSTA
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION