FILED
JAN 0 4 2011

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DONALD R. YOUNG,

               Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

               Defendant.

Case No. 09-CV-23-AC

FINDINGS AND
RECOMMENDATION

_____

ACOSTA, Magistrate Judge:

*Introduction*

      Before the court is Plaintiff's Motion for Approval of Attorneys Fees Pursuant to 42 U.S.C.

§ 406(b), which is unopposed.  The motion requires this court to apply the still-evolving standard

for awarding attorney fees in Social Security cases under § 406(b). Based on the factors established by *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), and explained in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (en banc), the motion should be granted in part and fees awarded in the amount of $23,630.00.

*Background*

A.    The Disability Case.

Young applied for disability benefits on March 18, 2004, alleging disability since December 20, 2003, due to "vertigo associated with disturbance of labyrinthine-vestibular [nerve] function" and oscillopsia[1] based on the loss of function of his right vestibular nerve. (Tr. 59-61, 82.) The Commissioner denied Young's application initially and upon reconsideration. (Tr. 46-56.) After a hearing held on March 2, 2005, Administrative Law Judge ("ALJ") William Stewart issued a decision on June 24, 2005, in which he found Young not disabled and not entirely credible. (Tr. 17-28.) ALJ Stewart concluded that Young suffered from the physical impairments of vestibular disorder with loss of labyrinthine-function in one ear with persistent vertigo, dizziness, lightheadedness, unsteadiness, and fatigue, as well as the psychological impairments of major depressive disorder and anxiety, which collectively qualified as severe. (Tr. 27.) He found that such impairments did not meet the criteria for any of the listed impairments and that Young retained the residual functional capacity to perform a reduced range of medium and light exertional level work with extensive additional restrictions, including not carrying more than twenty pounds, avoiding

---

[1] Oscillopsia is defined as "abnormal jerky eye movements . . . [which] create a subjective sensation that the environment is oscillating." Kenneth N. Anderson *et al, Mosby's Medical, Nursing, & Allied Health Dictionary* (5th ed. 1998).

rough ground and sudden changes in posture, standing for only twenty minutes at a time, limiting repetitive head movements, engaging in only occasional reading, stooping, crouching, bending and loud noises, and no climbing. (Tr. 27.) Based on these limitations and considering Young's age, training, and transferable skills, ALJ Stewart determined that Young retained the ability to work as a file clerk, telephone solicitor, and survey worker. (Tr. 27-28.) On February 14, 2006, the Appeals Council denied Young's request for review which made ALJ Stewart's decision the Commissioner's final decision. (Tr. 6-8.) Young appealed the decision to this court on April 17, 2006, by filing *Young v. Commissioner, Social Security Administration*, CV No. 06-516-ST (the "First Appeal").

In the brief filed in support of the First Appeal on October 27, 2006, Young argued that ALJ Stewart erred when he failed to give sufficient reasons for rejecting both the opinion of Dr. Alexander Schleuning, Young's treating physician, that Young was unemployable and met the criteria for Listing 2.07, and the testimony of Young and his wife. Specifically, Young argued that ALJ Stewart improperly considered only Young's mild hearing loss, rather than the combination of his impairments, in finding that he did not meet the requirements for Listing 2.07, and improperly rejected Dr. Schleuning's opinion because it was based on a finding that Young was unemployable, rather than that he was disabled, or unable to work. Young further argued that ALJ Stewart found Young's statement of his limitations to be generally credible but then rejected, without providing adequate reasons, testimony from both Young and his wife about his need to take breaks every ten to fifteen minutes. The Commissioner responded arguing that the medical evidence supported the findings, that the ALJ, not the treating physician, is charged with determining disability, and that ALJ Stewart provided appropriate reasons for rejecting testimony offered by the treating physician, Young, and his wife.

PAGE 3 - FINDINGS AND RECOMMENDATION                    {SIB}

In a Findings and Recommendation filed March 16, 2007, Magistrate Judge Janice Stewart found that ALJ Stewart erred in rejecting Young's description of his limitations by referring to the record in general, rather than discussing in detail the evidence on which he relied, and in omitting an analysis of the testimony of Young's wife. (Tr. 420, 427.) On the other hand, Judge Stewart specifically found that ALJ Stewart's analysis of Dr. Schleuning's opinion and his conclusion that Young did not meet or equal Listing 2.07 were proper. (Tr. 425.) Judge Stewart recommended remanding the matter for proper consideration of Young's testimony and consideration of Young's wife's testimony, specifically with regard to Young's need to take regular breaks, and the incorporation of such evidence in the hypothetical posed to the vocational expert, as necessary. (Tr. 427-29.) Neither party filed objection to the Findings and Recommendation and District Judge Anna Brown adopted the Findings and Recommendation in its entirety by order dated April 19, 2007. (Tr. 410-12.)

On April 11, 2008, ALJ Stewart held a second hearing on Young's claim. On May 30, 2008, ALJ Stewart issued a decision finding Young not disabled for the second time. ALJ Stewart determined that Young suffered from a severe impairment based on a history of labyrinthitis with vestibular neuronitis and possible perilymph fistulas, as well as sleep apnea. Additionally, ALJ Stewart concluded that Young suffered from a history of depression and anxiety that constituted severe impairments through the date of the prior hearing decision, but had not constituted severe impairments since that date (Tr. 392.) ALJ Stewart then determined that Young's impairments, both singly and in combination, did not meet or equal a listed impairment. (Tr. 393.) ALJ Stewart found Young's symptom testimony "not credible to the extent inconsistent with the assessment of the residual functional capacity" and that Young had the residual functional capacity to perform light

work, limited by his need to avoid straining, bending over, rapid head movements, rapid postural changes, and crowds, and by his inability to tolerate exposure to loud noises, heights such as ladders or scaffolds, or frequent movement not within his control. ( Tr. 394-5.) Based on these restrictions, ALJ Stewart concluded that Young retained the ability to work as a table worker, ticketer, and garment sorter and, therefore, not disabled. (Tr. 408-9.) The Appeals Council denied review of the matter, making the ALJ's decision the final decision of the Commissioner. (Tr. 375-78.)

Young filed this action appealing the final decision on January 7, 2009 (the "Second Appeal"). In the Second Appeal, Young again asserted that ALJ Stewart erred in rejecting his testimony regarding the severity of the limitations caused by his impairment, which was supported by the opinions of his treating physicians. Young addressed each of the seven reasons given by ALJ Stewart for not finding Young totally credible, arguing that they were not supported by the record or the law.

On December 21, 2009, this court issued its Findings and Recommendation recommending that the Commissioner's decision be reversed and the action remanded for the immediate calculation and award of benefits. This court found that ALJ Stewart failed to address the effect of Young's impairment on his ability to read, as directed by Judge Stewart, and erroneously determined that Young's testimony of his need to take a break after fifteen minutes of light activity was not supported by the medical evidence. This court further found that Young's testimony regarding fatigue was corroborated by medical evidence and otherwise supported by the record. After crediting Young's testimony, this court found the record to be sufficiently developed and, in light of the additional limitations described by Young, to require a finding of disability. Neither party filed objections to the Findings and Recommendation, which were subsequently adopted by Judge Ancer

PAGE 5 - FINDINGS AND RECOMMENDATION                                   {SIB}

Haggerty on January 21, 2010.

B.      The Fee Request.

        Young submitted two applications for Equal Access to Justice Award ("EAJA") attorney fees

pursuant to 28 U.S.C. § 2412 – one in each case.  On May 1, 2007, Young's attorney requested

$5,129.45 for attorney fees and $365.00 for costs, a total of $5,494.45, for services rendered in the

First Appeal. The Commissioner stipulated to the request, which was not supported by a declaration

or itemization of the hours spent on the matter, and Judge Brown entered an order awarding the fees

on May 2, 2007. On March 2, 2010, Young's attorney submitted an application related to the Second

Appeal seeking attorney fees in the amount of $7,100.00 and expenses in the amount of $374.48, for

a total of $7,478.48. At this court's request, Young's attorney submitted a declaration indicating that

he had expended not less than 40.90 hours in connection with the Second Appeal, that the EAJA

hourly rates for 2008, 2009, and 2010, adjusted for inflation, were $172.85, $172.24, and $172.24,

respectively, and that the fee requested represented a reduced fee resulting from negotiations between

counsel and should not be construed as an admission that the time reflects the actual time spent on

the case.  The Commissioner stipulated to the requested attorney fees and expenses and on March

24, 2010, this court issued an Order awarding EAJA attorney fees in the full amount requested,

$7,100.00.

        On May 28, 2010, Young's attorney filed his unopposed motion for attorney fees under 42

U.S.C. § 406(b),[2] seeking $29,538.25 for the work performed in this case before this court.[3]

_____

        [2]  In attorney fee motions under § 406(b), the real party in interest is the attorney, not the
claimant. *Gisbrecht*, 535 U.S. at 798 n.6.

        [3]  In Social Security cases, attorney fees may be awarded under both the EAJA and § 406(b),
but "an EAJA award offsets an award under Section 406(b)." *Gisbrecht*, 535 U.S. at 796. Congress

PAGE 6 - FINDINGS AND RECOMMENDATION                              {SIB}

Attached to the memorandum in support of the motion is a copy of the contingent fee agreement entered into between Young and his attorney in which Young agreed that attorney fees for representation before the court be the greater of: "1) 25% of the past-due benefits resulting from my claim or claims (which I understand may exceed $700.00 per hour), [or] 2) Such amount as my attorneys are able to obtain pursuant to the Equal Access to the Justice Act" (the "Fee Agreements"). Young signed the Fee Agreement on September 4, 2008. Young's counsel represents that the $29,538.25 he seeks is twenty-five percent of his clients past-due benefits to be awarded. Based on this representation, the past-due benefits Young will receive is $118,153.00.[4]

### Legal Standard

Attorney fee awards for Social Security cases are governed by 42 U.S.C. § 406(b), which provides in relevant part:

(b) Attorney fees

(1)(A) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, *the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled* by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(I) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

---

enacted the EAJA in 1980 to permit recovery of attorney fees in those cases where "the Government's position in the litigation was not 'substantially justified.'" *Gisbrecht*, 535 U.S. at 796, citing 28 U.S.C. § 2412(d)(1)(A). EAJA fees are determined by the time spent and the attorney's hourly rate, which rate is statutorily capped $125.00. *Gisbrecht*, 535 U.S. at 796, citing 28 U.S.C. § 2412(d)(2)(A).

[4] Young's attorney does not provide the amount of benefits his client will receive, either by quoting an exact amount or an estimated amount.

PAGE 7 - FINDINGS AND RECOMMENDATION                                    {SIB}

(emphasis added.)

Two cases control application of the § 406(b) standard. In *Gisbrecht v. Barnhart*, the Supreme Court undertook to clarify the statutory "reasonable fee" standard by taking on the question of the "appropriate starting point" for judicial determinations of fee requests. The Court directed lower courts to approach § 406(b) fee determinations by looking first to the contingent-fee agreement and then "testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808. In support of a fee request under § 406(b), the claimant's attorney "must show that the fee sought is reasonable for the services rendered." *Gisbrecht*, 535 U.S. at 807. Important on this point is that a twenty-five percent contingent-fee award is not automatic or even presumed; "the statute does not create any presumption in favor of the agreed upon amount." *Id.* at 807 n.17. *Accord Dunnigan v. Commissioner*, No. 07-1645-AC, 2009 WL 6067058, at *7 (D. Or. Dec. 23, 2009), *cited with approval, Carlson v. Commissioner*, No. 08-1202-ST, 2010 WL 2813427, at *1 (D. Or. July 15, 2010). Second, the court is to review contingent-fee arrangements "as an independent check, to assure that they yield reasonable results in particular cases." *Id.* at 807. The statute requires "an affirmative judicial finding that the fee allowed is 'reasonable'[.]" *Id.* at 807 n.17 (citation omitted). The Court then identified four factors lower courts should use to determine whether a reduction from the contingent-fee amount is appropriate:

1. the character of the representation, specifically, whether the representation was substandard;

2. the results the representative achieved;

3. any delay attributable to the attorney seeking the fee; and

4. whether the benefits obtained were "not in proportion to the time spent on the case" so that the attorney does not receive a "windfall".

*Gisbrecht*, 535 U.S. at 808. To assess the last factor, the district court may request or examine the requesting attorney's record of hours spent and a statement of the attorney's normal hourly rate as an aid in assessing the reasonableness of the fee." *Id.*

In *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (en banc), the Ninth Circuit added its construction of *Gisbrecht* and § 406(b). There, the Ninth Circuit reversed § 406(b) fee awards in three cases because the district courts had premised their fee analysis on the lodestar method rather than on the attorney-client fee agreements in violation of *Gisbrecht's* mandate. *Id.* at 1150. Reiterating *Gisbrecht's* directive, the Ninth Circuit stated that the courts must assure the reasonableness of Social Security case fee awards by beginning with the fee agreement and then determining whether that amount should be reduced, not deciding, as the district courts had done, "whether the lodestar amount should be enhanced." *Id.* at 1149. The Ninth Circuit then added a risk factor to the *Gisbrecht* test by directing district courts to "look at the complexity and risk involved in the specific case at issue to determine how much risk the firm assumed in taking the case." *Id.* at 1153. Finally, the Ninth Circuit noted that although the district courts have discretion to determine a reasonable fee under § 406(b), they must provide an explanation of the reasons for a fee award, specifically, how the award relates to the circumstances of the particular case. *Id.*

### Discussion

*Gisbrecht* and *Crawford* make clear that the § 406(b) analysis always begins with the contingent-fee agreement, and then proceeds with an evaluation of the agreement's reasonableness and an assessment of whether any reduction is appropriate by applying the factors identified in

*Gisbrecht* and *Crawford* to the circumstances of the specific case.[5] With this general guidance, the court turns to the specific fee request here.

A.      The Fee Agreement.

The first step in the *Gisbrecht* analysis is to look to the contingency agreement and determine whether it is within the twenty-five percent statutory boundary. A contingent-fee agreement exists between Young and his attorney, by which they agreed the attorney fee for work in federal court would be the greater of the EAJA fee or twenty-five percent of any past-due benefits received.[6] The terms of the contingency-fee agreement are within the statutory limits.

The next step is to confirm that the fee sought does not exceed § 406(b)'s twenty-five percent ceiling, which determination requires evidence of total past-due benefits to be paid. Here, Young's attorney provides a copy of the Notice of Award dated May 22, 2010, by which the Commissioner advised Young that he was entitled to disability benefits beginning in June 2004 and sets forth the monthly amounts payable to Young for each calendar year. While the Notice of Award does not specify the amount of past-due benefits to which Young is entitled, it does indicate that the Commissioner is withholding $29,538.25 for a possible attorney fee request of no more than twenty-

---

[5] The court emphasized focusing the § 406(b) analysis on the particular case: "'Rather . . . a court's primary focus should be on the reasonableness of the contingency agreement in the context of the particular case.'" *Crawford*, 586 F.3d at 1148 n.7 (quoting *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990)).

[6] The Fee Agreement, which was signed by Young on September 4, 2008, clearly relates only to the Second Appeal. Young did not offer a separate contingent-fee agreement executed before the filing of the First Appeal. Although the fee agreement for the First Appeal is not part of the record, the Commissioner does not dispute the existence of such an agreement or its terms. Further, Young himself encourages the court in an email dated May 24, 2010, to award his counsel "the full 25% of the retroactive benefit payment from his award" for his "tireless, persistent and professional effort over two successful federal court cases. Accordingly, the court will consider the Fee Agreement to be relevant to both the First and Second Appeal.

PAGE 10 - FINDINGS AND RECOMMENDATION                                      *{SIB}*

five percent of past-due benefits. Based on this evidence, it is clear that the fee amount sought is equal to twenty-five percent of the past-due benefits to which Young was entitled.

B.    The Reasonableness of the Fee Sought.

Having determined that the contingent-fee percentage specified in the agreement is within the statutorily mandated ceiling and that the fee sought does not exceed that ceiling, the court turns to its primary inquiry, the reasonableness of the fee sought. Young's attorney seeks $29,538.25 for work in this case before this court. Applying the *Gisbrecht* factors, as interpreted by *Crawford*, the court finds that Young's attorney has not demonstrated that this fee, which represents the entire twenty-five percent fee authorized by the statute, is reasonable on the record of this case.

        1.    The requesting attorney's burden.

*Gisbrecht* established that the attorney seeking a § 406(b) fee must demonstrate the reasonableness of the fee sought. Young's attorney points to the existence of a contingent-fee contract and notes that the Supreme Court in *Gisbrecht* held that the district court should "start by giving primacy to the contingent-fee contract, then to reduce the agreed-upon fee <u>only if</u> the resulting fee would be excessive under the circumstances." (Mem. in Supp. of Pl.'s Mot. for Approval of Att'ys Fees ("Memo.") at 1-2.) Counsel then identifies and analyzes the five factors identified in *Gisbrecht* and *Crawford* as relevant to the court's consideration of a request for attorney fees. (Memo at 3-7.) Young's counsel has met his obligation to argue the reasonableness of the fee sought as required under *Gisbrecht*.

        2.    The character of the representation.

*Gisbrecht* stated that reduction of a twenty-five percent contingency fee is appropriate if the character of the representation is substandard. *Gisbrecht*, 535 U.S. at 808. On this point the

PAGE 11 - FINDINGS AND RECOMMENDATION                                            {SIB}

Supreme Court cited *Lewis v. Secretary of Health and Human Servs.*, 707 F.2d 246 (6th Cir. 1983),
where, because of the poor quality of legal representation, the Sixth Circuit vacated and remanded
a lower court's twenty-five percent attorney fee award. *Id.* at 250-51. In *Lewis*, the substandard
representation consisted of counsel's poor preparation for hearings, his failure to meet briefing
deadlines, his submission of court documents void of legal citations, and over-billing his client. *Id.*
at 248-50. The court also stated that "[r]outine approval of the statutory maximum allowable fee
should be avoided in all cases. In a great majority of the cases, perhaps, a reasonable fee will be
much less than the statutory maximum." *Id.* at 250.

Young's attorney's representation was not substandard. Rather, it demonstrated competency
in and familiarity with the subject matter. The briefing on the merits was useful to the court, was
of good quality, and was focused on the issues relevant to Young's claim for benefits. Counsel's
references to the administrative record were accurate, relevant, and helpful, and he cited to
appropriate legal authority to support his arguments. Because, under *Gisbrecht*, reduction may be
taken only for substandard performance, no reduction here is warranted under this factor.

3.      The results the representative achieved.

Young's attorney sought an award of disability benefits for his client. In the First Appeal,
Judge Stewart considered the fully briefed appeal and remanded the matter for further proceedings,
including reevaluation of the improper rejection of both Young and his wife, specifically with regard
to Young's need to take regular breaks, and the incorporation of such evidence in the hypothetical
posed to the vocational expert. The Second Appeal resulted in this court's reversal of the
Commissioner's finding of "not disabled" and a remand for the immediate calculation and award of
benefits to Young. Ultimately, Young's attorney won disability benefits for his client.

PAGE 12 - FINDINGS AND RECOMMENDATION                                    {SIB}

The circumstances in which the result is achieved are important to the court's assessment of this factor. The inquiry focuses on whether counsel's efforts made a "meaningful and material contribution towards the result achieved." *Lind v. Astrue*, No. SACV 03-01499 AN, 2009 WL 499070, at *4 (C.D. Cal. Feb. 25, 2009).

In the First Appeal, Young asserted that ALJ Stewart improperly rejected the opinion of Dr. Schleuning and the testimony of Young and his wife. The Commissioner argued that ALJ Stewart's decision was supported by the medical evidence and that the ALJ, not the treating physician, was responsible for determining whether Young was disabled. Judge Stewart agreed with Young that the ALJ improperly rejected the testimony of Young and his wife and remanded for reconsideration of this testimony, particularly with regard to Young's need to take breaks, but found in the Commissioner's favor on the issue of Dr. Schleuning's opinion and the ALJ's determination that Young met the requirements of Listing 2.07. While Young did not prevail on all of his arguments, his attorney was sufficiently successful in presenting his arguments in the First Appeal to convince Judge Stewart to remand for further proceedings.

In the Second Appeal, Young's attorney again argued that ALJ Stewart erred in rejecting Young's testimony and specifically addressed each of the seven reasons given by the ALJ in support of his decision. As in the First Appeal, the Commissioner vigorously defended ALJ Stewart's decision asserting that ALJ Stewart offered clear and convincing reasons for rejecting Young's testimony that were supported by substantial evidence in the record.

This court agreed with Young. This court found that on remand ALJ Stewart failed to address all of the issues identified by Judge Stewart and erroneously determined that Young's testimony regarding his need for regular rest breaks was not adequately supported by the medical

evidence. In the Findings and Recommendation issued December 21, 2009, this court recommended reversing the Commissioner's decision and remanding the matter for immediate calculation and award of benefits. In the absence of objections, Judge Haggerty adopted the Findings and Recommendation in its entirety.

While the end result achieved here, a remand for the immediate calculation and award of benefits, was favorable for Young, that outcome cannot be viewed in isolation nor can it be presumed always to require a fee award of the full twenty-five percent. If obtaining benefits always supported awarding fees for the full twenty-five percent, it would make irrelevant the other *Gisbrecht* factors and render perfunctory the trial courts' assigned task of "making reasonableness determinations in a wide variety of contexts[.]" *Gisbrecht*, 535 U.S. at 808. *See also Carlson*, 2010 WL 2813427, at *3 (quoting *Dunnigan*, 2009 WL 6067058, at *12). Nothing in *Gisbrecht* – or *Crawford* – supports such a conclusion; rather, as the Sixth Circuit observed, "[r]outine approval of the statutory maximum allowable fee should be avoided in all cases. In a great majority of the cases, perhaps, a reasonable fee will be much less than the statutory maximum." *Lewis v. Secretary of Health and Human Servs.*, 707 F.2d at 250.[7] The favorable result Young's attorney obtained for his client provides support for his fee request but is not determinative of the request. A reduction of fees is not warranted under this factor.

4.     Attorney responsible for any delay.

It is evident from the record that this factor warrants a small reduction in the fee Young's attorney seeks. The Supreme Court stated that a reduction of a requested fee is appropriate under

---

[7] *Gisbrecht* cited *Lewis* with approval when explaining the bases for the factors used to determine the reasonableness of a § 406(b) fee request. *See Gisbrecht*, 535 U.S. at 808.

PAGE 14 - FINDINGS AND RECOMMENDATION                    {SIB}

under § 406(b) if the requesting attorney inappropriately caused delay in the proceedings, so that the attorney "will not profit from the accumulation of benefits" while the case is pending. *Gisbrecht*, 535 U.S. at 808 (citing *Rodriquez v. Bowen*, 865 F.2d 739, 746-47 (6th Cir. 1989)). Here, Young's attorney filed unopposed motions for extension of time for each brief. Counsel filed two extensions of time to file his opening brief in the First Appeal extending the deadline a total of seventy-five days. The first motion requested an additional sixty days due to brief deadlines in nineteen other matters over a two month period and involvement as counsel in a complex case involving local land use issues. The second motion requested an additional fifteen days due to deadlines for ten briefs falling with the same week, including one in a Ninth Circuit matter, and counsel's upper back problems, which had slowed down his production considerably. Young's attorney also sought an extension of fourteen days to file his reply brief in the First Appeal due to a family emergency that required him to be out of town. In the Second Appeal, Young' attorney again requested two extensions of time totaling thirty-four days to file his opening brief. The first request for an additional thirty days was supported by two declarations. The first declaration indicated that the extension was necessary due to deadlines for six opening briefs and the need to review ten new cases over the next thirty days. The second declaration was the undated declaration offered in support of his first motion for extension of time filed in the First Appeal. Young's counsel subsequently requested an additional four days due to the complexity and facts of the case. Finally, Young's attorney requested an additional fourteen days to file his reply brief in the Second Appeal due to a two-week vacation scheduled just before the reply brief was due.

While no evidence in the record suggests that any of this time was intended, even in part, to delay the proceedings in this case, the requested extensions totaled 127 days, more than four months,

based in large part on counsel's case load, a matter over which counsel has control. The court acknowledges that attorneys specializing in Social Security cases will accept numerous clients to ensure that they are able to make a satisfactory living. However, the successful Social Security claimant should not be made to subsidize the attorney's case load choices that cause delay of the claimant's case for months at a time. Accordingly, a slight reduction under this factor is warranted.

5.      Whether the benefits are large in comparison to the time spent on the case.

*Gisbrecht* approved lower courts' use of time records in evaluating whether the disability benefits awarded the claimants were large in comparison to the time spent by counsel on the case. 535 U.S. at 808. Accordingly, the Ninth Circuit in *Crawford* used the plaintiffs' attorneys' submissions of an itemized fee petition and other materials to aid the court's determination of whether the benefits were large in comparison to the time spent in each case.

Young's attorney submitted records which indicate that he spent a total of a 78.8 hours on this court case. The time records reveal that between April 5, 2006, and April 24, 2007, counsel expended 28.9 hours on the First Appeal. Young's counsel filed three main documents in the First Appeal: the complaint (a three-page document that followed standard format for Social Security complaints in federal court), an opening brief (sixteen pages in length), and a reply brief (which reply comprised five pages). The record in the First Appeal contained the 374-page administrative transcript ( under the average range of length), the Commissioner's four-page answer, and the nineteen-page opposition brief, all of which Young's attorney or his associates read, as evidenced by the briefing and time records.

The remaining 49.9 hours were attributed to the Second Appeal and were incurred between December 29, 2008, and January 10, 2010. In the Second Appeal, Young's attorney again filed three

main documents: the complaint (a three-page complaint virtually identical to that filed in the First Appeal), an opening brief (twenty-seven pages in length), and a response to the Commissioner's opposition brief (ten pages in length). The record in the Second Appeal contained the 665-page administrative transcript (within the average range of length), the Commissioner's three-page answer, and the Commissioner's nineteen-page opposition brief. Again, it is clear from the billing records and the briefing filed in the Second Appeal, that Young's attorney read all of this material.

The opening brief counsel submitted on the merits in the First Appeal contained a significant amount of standard content for a Social Security plaintiff's brief: a short statement of jurisdiction, the appropriate standard of review, and a description of the sequential five-step process. The opening brief also included case-specific content. Young briefly summarized his testimony, as well as that of his wife and the vocational expert. He adopted the ALJ's summary of the medical record and quoted the ALJ's disability findings. Finally, he argued the merits of his four asserted errors: improper rejection of the treating physician's opinion and the testimony of Young and his wife, and the erroneous finding that he did not meet the criteria of Listing 2.07. In his reply brief, he addressed the arguments offered by the Commissioner, briefly discussing one new case and citing to two others. In his opening brief in support of the Second Appeal, Young included the same standard content as well as a detailed thirteen-page summary of the testimony and medical evidence. Young's attorney devoted ten pages to arguments addressing each of the reasons given by the ALJ for rejecting Young's testimony regarding the extent of his limitations. In response to the Commissioner's opposition brief, Young addressed the ALJ's rejection of his testimony regarding fatigue, relying on the consistency of the medical evidence and his statements, and the ALJ's consideration of his application for benefits as a reason to question his credibility. Young referenced

PAGE 17 - FINDINGS AND RECOMMENDATION                    {SIB}

one new case in a footnote.

Young's attorney argues that his attorney fees request represents dramatically less than the average hourly rate needed to compensate attorneys for the risk of nonpayment due to the contingent nature of the case. In support of this argument, he attempts to establish the reasonable hourly rate he proposes to apply to the work performed. Rather than begin with his normal hourly rate for non-contingent cases,[8] however, counsel instead refers to the *Oregon State Bar 2007 Economic Survey* ("Survey"), used by the judges in this district as the "initial benchmark" for determining reasonable hourly rates applicable to attorney fee awards. *See* "Message From The Court Regarding Attorney Fee Petitions," available at www.ord.uscourts.gov/attorney_fee_statement. The Survey reports that the average hourly non-contingent bill rate in Portland is $244 per hour. *Oregon State Bar 2007 Economic Survey* at 28. (Memo. at 3.) Counsel uses this number as the basis rate for use in further calculations.

Then, to account for the risk of nonpayment, Young's counsel argues that because there is only a one-third chance of winning benefits for a claimant, a "contingency multiplier" of 2.98 (100/33.52) is warranted. Applying this multiplier, counsel calculates that $727.12 per hour ($244.00 x 2.98) is the effective hourly rate required to properly compensate Oregon attorneys for the contingency risk of handling Social Security cases. (Memo. at 5-6.) Counsel notes that the hourly rate requested for this matter, which he calculates to be $374.85, is well below the $727.12 hourly rate necessary to make up for the risk factor discussed above. Young's attorney also notes that the Ninth Circuit has recognized that an enhanced hourly rate for contingency cases is

---

[8]Young's attorney represents that he does not have a set hourly rate for social security matters because the statute prohibits attorneys from charging an hourly rate for representing Social Security claimants in federal court.

PAGE 18 - FINDINGS AND RECOMMENDATION                    {SIB}

reasonable in light of the significant risk of nonpayment. *In Re Washington Public Power Supply Sys. Lit.*, 19 F.3d 1291 (9th Cir. 1994).

As noted above, both *Gisbrecht* and *Crawford* recognize that lodestar calculations are not the primary consideration for attorney fee awards under § 406(b). Here, counsel is specifically limited to attorney fees not exceeding twenty-five percent of past-due benefits -- an amount Young's attorney calculates to be $374.85 per hour. The much higher $727.12 per hour figure resulting from Young's attorney's machinations of the average hourly rate and a 33.52 percent multiplier is not instructive in determining the amount of fee to be awarded in this matter. However, a comparison of the lodestar calculation to an attorney fee award determined by using the factors set forth in *Gisbrecht* and *Crawford* may be helpful in gauging the reasonableness of that award.

The briefing prepared by Young's counsel addressed the relevant issues and wove law and fact with workman-like skill. Judge Stewart remanded the case for additional consideration in the First Appeal based on the arguments relating to the testimony of Young and his wife, but she also rejected the arguments with regard to the opinion of the treating physician and Listing 2.07. After remand, Young's counsel properly limited his claim to the improper rejection of Young's testimony and ultimately won benefits for Young on this issue. This case was appealed to federal court on two occasions, which justifies the expenditure of additional attorney time when compared to a social security case that appears in federal court only once. However, the nearly doubling of the time spent in pursuit of the Second Appeal when compared to the First Appeal is troubling and Young's counsel fails to explain it.. Additionally, the time reported as necessary to complete certain tasks, considering the complexity of the task and the expertise of counsel, appears excessive.

Counsel represents that he spent 1.25 hours preparing the form complaint and summons, 8.25

hours reviewing the 374-page administrative record, 10.5 hours writing the sixteen-page opening brief, and 5.5 hours writing the five-page reply brief in the First Appeal. In the Second Appeal, counsel represents that he spent 1.75 hours preparing the form complaint, summons and letter to the Attorney General, 12.6 hours reviewing the 665-page administrative record, 25.1 hours writing the twenty-seven page opening brief, and nine hours reviewing the Commissioner's opposition and writing the ten-page reply brief.

The four hours spent by Young's counsel preparing form complaints and summons which were duplicated in the Second Appeal, are excessive. The complaints and summons are form documents that merely require filling in blanks with information relevant to the specific claimant. Even more troubling is the amount of time spent preparing the same forms in the Second Appeal exceeded that spent in the First Appeal.

The 5.5 hours expended in writing a five-page reply brief which merely discussed the same facts and cases as those addressed in the opening brief, with the exception of the discussion of a case relied on by the Commissioner in his opposition brief and mere references to two new cases in a string cite, is also excessive in light of counsel's statement that he has worked almost exclusively on social security cases for the last fifteen years. His representation that he had nineteen social security briefs due over a two-month period on at least one occasion is evidence that he has vast experience in preparing social security briefs.

Young's attorney spent 8.25 hours reviewing the 374-page administrative record in the First Appeal. While he relied on the ALJ's summary of the medical record in the opening brief in that appeal, it is not unreasonable to assume that he took notes during the review to assure himself that the record was adequately discussed and to support his arguments that the treating physician and lay

PAGE 20 - FINDINGS AND RECOMMENDATION                                    {SIB}

testimony was improperly rejected and that Young met the criteria of Listing 2.07. Young's attorney represents that he spent 12.6 hours reviewing the administrative record in the Second Appeal which consisted of the original 374-page administrative record already reviewed by Young's attorney, and an additional 290 pages. Of the additional pages, approximately twenty-five pages were the Commissioner's decision on remand, sixty-two pages were the hearing transcript, and ninety pages were medical records relating to a variety of issues, including records on Young's sleep disorder from the Samaritan Sleep Disorder Lab, records on Young's balance problems from Dr. Owen Black at the Balance & Hearing Center, and the results of a neuropsychological evaluation from Joshua J. Boyd. The majority of the medial records related to a variety of prostrate and bladder issues from a number of treatment providers, which issues were not relevant to Young's application for disability benefits. The remaining 113 pages included the district court's rulings in the First Appeal, which counsel had already billed Young for reviewing in the First Appeal, duplicate records dated before the First Appeal was filed and relating to the First Appeal, such as another copy of the hearing transcript and the attorney fee agreement for Young's administrative representative, and various administrative documents, including notice of hearings and advise of rights. The court finds that the 8.25 hours spent reviewing the original administrative record was justified but that the 12.6 hours expended in reviewing the administrative record filed in the Second Appeal, much of which Young's counsel had already billed for reviewing in the First Appeal, was excessive.

At first glance, the 25.1 hours spent by Young's attorney hours writing the opening brief in the Second Appeal is bothersome when compared to the 10.5 hours he spent writing the opening brief in the First Appeal. However, this increase is justified to some degree by the increased size of the second brief generated by the thirteen-page discussion of the medical record which was absent

from the first brief, and counsel's attack on each of the reasons cited by ALJ Stewart as support for his decision to discredit Young's testimony. On the other hand, the second brief centered on only one error, that of the improper rejection of the claimant's testimony, which is argued in the majority of social security appeals filed before this court. The limited scope of the second brief, counsel's experience in social security appeals, and the relatively average length of the medical record, should have resulted in less time being spent on the preparation of the opening brief in the Second Appeal.

Review of these filings as well as the transcript and other entries in the record compels the conclusion that this case was unremarkable with regard to the administrative history of Young's social security application as well as the medical records relevant to his case. While this case involved two appeals to the district court before final resolution, the issues involved were common and not complex. The number of hours expended by Young's counsel were more than should have been incurred by an attorney with his experience in a case of this size and type, which supports a reduction from the requested fee.

6.    The risk presented by the case.

*Crawford* clarified that risk is an appropriate factor to consider in determining a § 406(b) award. The opinion also made clear that the individual case must be the focus of the risk analysis: "the district court should look at the complexity and risk involved in the specific case at issue to determining how much risk the firm assuming in taking the case." *Crawford*, 586 U.S. at 1153.

In his supporting briefing, Young's attorney quantifies risk, in part, using the approach that *Crawford* expressly rejected. His analysis centers on the risk of nonpayment and underpayment in contingent cases generally and he devotes much of his discussion to constructing the hourly fee needed in successful cases to compensate him for these risks. Young's attorney also notes that this

case presented specific high risk factors, such as multiple appeals at the agency level resulting in four levels of intensive review at the administrative level, and the intensely fact-based issue of the claimant's credibility.

Turning then to the particular circumstances of this case, the court concludes that neither the factual nor legal issues were particularly complex. The medical record covered a fairly defined period of time and was not necessarily lengthy. The dispute generally centered on whether the court should credit the improperly rejected evidence and remand to award immediate benefits. After the First Appeal, the issues were narrowed to the question of the credibility of Young's testimony, specifically with regard to the effect of his impairment on his need to take regular breaks and his ability to read. Young's numerous medical conditions, both physical and mental, were serious, but not necessarily medically complex ailments.

In sum, the record of this case reveals the existence of an slightly expanded administrative record, an average medical record, and no basis to conclude that Young's situation presented unique, unusual, or complex legal issues. Rather, at the conclusion of the administrative process, Young's circumstances presented a case involving commonly encountered issues. Thus, the court finds that the risk associated with this particular case was not particularly high. Such a finding warrants a reduction of the twenty-five percent maximum under this factor.

C.    The Fee Award In This Case.

Young's attorney seeks a fee of $29,538.25, an amount he says represents twenty-five percent of a past-due benefits award that his client will receive. Applying the *Gisbrecht* factors and guided by the Ninth Circuit's *Crawford* discussion of those factors, the court has determined that reductions are appropriate under three of the six factors it must consider: the delay attributable to Clark's

counsel, the benefits obtained compared to the time spent, and the risk associated with the particular case.

In this case, the court concludes that Young's attorney's § 406(b) fee request should be reduced to $23,630.00, eighty percent of the fee requested and almost twenty percent of the benefits awarded. This percentage accounts for reduction under the factors discussed above, but also accounts for the success obtained, Young's praise of his attorney's work and request that he be awarded the full twenty-five percent of past-due benefits, and counsel's experience and expertise in this area of law, considerations that mitigate the reduction here. On that latter element, this court agrees with Judge Bea's observation that the courts should avoid fee awards that "punish successful attorneys and reward incompetent attorneys" (*Crawford*, 586 F.3d at 1158 n.4) (Bea, J., dissenting), a result obtained when courts award lower § 406(b) fees to experienced attorneys who spend less time on a Social Security case because they are more experienced and efficient in handling them. The record here supports a fee award that takes into account Young's attorney's experience in this area, which undoubtably contributed to the result he obtained for his client. Applying the reduction to the $29,538.25 requested fee results in a § 406(b) fee award of $23,630.00.

*Crawford* expressly recognized that "[a]s evidence of the reasonableness of the resulting fee," the court may consider as an aid counsel's billing records and lodestar calculations. *Crawford*, 586 F.3d at 1151. A comparison of the § 406(b) fee the court has determined should be awarded here to a lodestar assessment is an appropriate method of gauging the reasonableness of that fee award. As an initial observation, it is Young's attorney's burden to demonstrate the reasonableness of his fee request. In addition to addressing the *Gisbrecht* and *Crawford* factors, he supported the effective hourly rate, $374.85, that his proposed fee award would produce, with a series of calculations not

PAGE 24 - FINDINGS AND RECOMMENDATION                    *{SIB}*

based on this specific case. These shortcomings impair counsel's effort to meet that burden, but there is enough information in the record, coupled with counsel's supporting briefing, to aid the court's comparison on this point.

The court's fee award here results in an effective hourly rate of $299.88, a per-hour rate that is nearly twenty percent higher than the $244.00 hourly rate for Portland private-practice attorneys in the "non-contingent" category, which rate Young's attorney offered as the base hourly rate for his calculations. In fact, this effective hourly rate places Young's attorney comfortably above both the average and median of hourly billing rates of Portland attorneys in the "other" category, at approximately the 75th percentile. *See Oregon State Bar 2007 Economic Survey* at 31. Under a traditional lodestar approach, the effective hourly rate resulting from the court's award here is squarely within the reasonable range.

Furthermore, the amount of the fee represents almost twenty percent of the past-due benefits to be awarded to Young, a percentage comparable to the percentages the *Crawford* court implicitly approved based on significantly more detailed supporting information. *See Crawford*, 586 F.3d at 1145-46, 1151 (observing that the fees sought and approved by the majority were "not excessively large in relation to the benefits achieved"). Finally, the fee awarded also avoids a "windfall" to Clark's attorney, a potential outcome of which courts should be mindful and should strive to avoid. *See Gisbrecht*, 535 U.S. at 808 (quoting *Wells v. Sullivan*, 907 F.2d 367, 372 (2nd Cir. 1990)). In sum, testing the court's fee award against an appropriate hourly rate and lodestar factors confirms that the court's reduction and resulting fee award are reasonable on the record of this case.

### Conclusion

Plaintiff's Unopposed Motion for Attorney Fees Pursuant to 42 U.S.C. § 406(b) should be

PAGE 25 - FINDINGS AND RECOMMENDATION                    {SIB}

GRANTED in part and a § 406(b) fee of $23,630.00 should be awarded to Young's attorney.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **January 19, 2011**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 4th day of January, 2011.

_____
JOHN V. ACOSTA
United States Magistrate Judge